*Evan S. Schwartz*
New York Bar No. 2428825
SCHWARTZ LAW PC
122 East 42nd Street, Suite 725
New York, NY 10168
(212) 608-5445

*Stephen M. Hauptman*
New York Bar No. 4491411
NEWMEYER & DILLION LLP
895 Dove Street, 5th Floor
Newport Beach, CA  92660
(949) 854-7000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------- X

| | |
|---|---|
| LORI KILGANNON, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>   -against-<br><br>SOULCYCLE, INC., a Delaware corporation,<br><br>              Defendant. | :   INDEX NO.<br>:<br>:   **CLASS ACTION COMPLAINT FOR:**<br>:<br>:   **(1) VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 620 ET SEQ.**<br>:<br>:   **(2) VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**<br><br>     **JURY TRIAL DEMANDED** |

--------------------------------- X

## <u>GENERAL ALLEGATIONS</u>

1.     Plaintiff LORI KILGANNON ("PLAINTIFF"), individually and on behalf of all others similarly situated, brings this class action against Defendant SoulCycle, Inc. ("SOULCYCLE") for its violations of New York General

Business Law ("N.Y. GBL") §§ 620 et seq. ("Health Club Services Law" or "HCSL") and N.Y. GBL § 349 ("Consumer Protection from Deceptive Acts and Practices" or "CPDAP"), which have proximately caused damages to PLAINTIFF and other New York residents.

## JURISDICTION AND VENUE

2.      This Court has diversity jurisdiction over PLAINTIFF's claims herein under 28 U.S.C. § 1332.  PLAINTIFF is and, at all relevant times to this action, was an individual residing in the City of Yonkers, County of Westchester, and is a Citizen of the State of New York.  SOULCYCLE is and, at all relevant times to this action, was a Delaware corporation, authorized to conduct business and, in fact, conducting business in the County of Westchester, State of New York, as well in other cities and counties throughout the State of New York.  Further, PLAINTIFF alleges that the amount in controversy as to all violations by SOULCYCLE against all class members exceeds $75,000.00

3.      This lawsuit involves SOULCYCLE's violations of New York law. Upon information and belief, venue is proper in this District because many of the acts and transactions giving rise to this action occurred within the jurisdiction of this District, including those involving PLAINTIFF.

## PARTIES

4.      PLAINTIFF is and, at all relevant times to this action, was an

individual residing in the City of Yonkers, County of Westchester, State of New York.  In addition, during and at all relevant times herein mentioned, PLAINTIFF was a "buyer" as that term is used and defined in HCSL.

5.      SOULCYCLE is and, at all relevant times to this action, was a Delaware corporation, authorized to conduct business and, in fact, conducting business in the County of Westchester, State of New York, as well in other cities and counties throughout the State of New York.  In addition, during and at all times herein mentioned, SOULCYCLE was a "health club" and "seller" as such terms are used and defined in HCSL.

## FACTUAL ALLEGATIONS

6.      N.Y. GBL § 620(1) provides, "[t]he legislature finds… that the health club services industry has a significant impact upon the economy and well being of this state and its local communities, and that the provisions of this article relating to such contracts are necessary for the public welfare."

7.      N.Y. GBL § 620(2) further provides that "[t]he legislature declares that the purpose of this article is to safeguard the public and the ethical health club industry against deception and financial hardship, and to foster and encourage competition, fair dealing, and prosperity in the field of health club services by prohibiting or restricting false or misleading advertising, erroneous contract terms, harmful financial practices, and other unfair, deceptive and discriminatory

practices which have been conducted by some health club operators."

8.     Pursuant to N.Y. GBL § 621(1), a "contract for services" means "a contract for consumer services for instruction, training or assistance in bodybuilding, exercising, weight reducing, figure development, the martial arts to include, judo, karate and self-defense, or any similar course of physical training to be provided for the future use by a consumer of the facilities providing the foregoing instruction, training or assistance; or for membership in any group, club, association or organization for any of the above purposes."

9.     SOULCYCLE operates indoor cycling studios where contracts for indoor cycling classes are offered to New York customers.  Such classes provide SOULCYCLE's customers with instruction, training or assistance in exercising, weight reducing, figure development and other physical training at SOULCYCLE's facilities.  SOULCYCLE does business and operates such indoor cycling studios throughout the State of New York.  Accordingly, SOULCYCLE is a "health club" entering into "contracts for services" as such terms are defined by HCSL, and SOULCYCLE is thereby obligated to meet and satisfy all of the requirements of HCSL in order to prevent harm to the public.

10.     Contracts for SOULCYCLE's health club services in New York, including indoor cycling classes, are almost exclusively entered into by customers online.  Upon visiting SOULCYCLE's website, http://www.soul-cycle.com/, the

customer can choose the number of classes permitted under the contract and the corresponding contract price.  Only after a contract is entered into with SOULCYCLE online can the customer reserve cycling classes at one of SOULCYCLE's studios, which reservations are also made online.

11.     Upon information and belief, SOULCYCLE's contracts with New York customers range from 1 to 50 classes and encompass contract prices between $20 and $4,000.  The number of classes selected by the customer on SOULCYCLE's website dictates the length of the term of the contract.  For example, a "First Time Ride" or "1 Class" contract "Expires in 30 days," a "5 Classes" contract "Expires in 45 days," and so on.

12.     After the customer selects the number of classes under its contract with SOULCYCLE on the website, he or she is directed to a payment screen where payment information is supplied by the customer.  At all times relevant to the CLASS as defined at paragraph 28 below, this screen also includes the following or similar language: "**We're sorry, but at this time we can not do returns or exchanges for online orders.**"

13.     At the time the customer enters his or her payment information on SOULCYCLE's website, he or she is required to check a box that provides: "I understand and accept the **terms and conditions**."  The "**Terms and Conditions**" on this page are hyperlinked and take the customer to a separate page titled

"**Terms and Conditions**."  However, at all times relevant to the CLASS as defined
at paragraph 28 below, such terms and conditions do not apply to or even reference
actual contract terms between SOULCYCLE and its customers, and provide no
information related to a contractual relationship between SOULCYCLE and its
customers or to the terms and conditions related to the health club services
provided by SOULCYCLE to its customers.  Instead, such "Terms and
Conditions" merely provide as follows: "**This policy governs your use of the
SoulCycle Website (the "Website") and the SoulCycle Mobile Application (the
"App")**."  (Emphasis added.)  Further, most of the purported "terms and
conditions" listed concern solely SOULCYCLE's rights and interests, and the
"Terms and Conditions" page does not include any integration or merger clause.  A
true and accurate exemplar copy of the "Terms and Conditions" page that
customers are provided access to upon entering their payment information on
SOULCYCLE's website is attached hereto as **Exhibit "A."**

14.     At all times relevant to the CLASS as defined at paragraph 28 below,
at the time the customer enters his or her payment information, and checks the box
to signify understanding and accepting the "terms and conditions," a contract is
entered into with SOULCYCLE.  The customer is then taken to a confirmation
page and also sent a "confirmation email."  The "confirmation email," which is
also designated a "Rider Receipt," identifies the number of classes permitted under

the contract with SOULCYCLE and confirms the payment information provided

by the customer.  The "confirmation email" also includes language regarding the

customer's ***inability*** to cancel the contract with language such as the following:

"Exchanges/store credit only," "No refunds" and/or "Honored within 30 days of

purchase."  The "confirmation email" contains no other terms or information

relative to the contract between SOULCYCLE and its customer, and no other

information, written or otherwise, is provided to the customer at the time of

entering into a contract with SOULCYCLE.  A true and accurate copy of the

"confirmation email" that was sent to PLAINTIFF upon entering into a contract

with SOULCYCLE is attached hereto as **Exhibit "B."**

15.     Accordingly, at all times relevant to the CLASS as defined at

paragraph 28 below, the actual, written contracts between SOULCYCLE and all of

its New York customers included only two conceivable documents – (1) the

"Terms and Conditions" page, which was hyperlinked at the time the customer

entered his or her payment information on the website (although, as explained

above, such terms and conditions provide no information relative to the contract

terms or the contractual relationship between SOULCYCLE and its customers) and

(2) the "Rider Receipt" or "confirmation e-mail" (which, as also explained above,

merely identifies the payment information provided by the customer and the

number of allowed classes, and represented that the customer could ***not*** cancel his

or her contract).  There are no other documents provided by SOULCYCLE to its

New York customers, whether physically or electronically, at the time of entering

into a contract for cycling classes.  Further, any other information that might have

been ascertainable by a customer on SOULCYCLE's website (e.g., information

contained in the "Frequently Asked Questions" section of SOULCYCLE's

website) was not a part of the actual written contract between SOULCYCLE and

its customers.

16.     The fact that contracts for health club services can only be entered

into by SOULCYCLE's customers online does not negate, limit or modify

SOULCYCLE's obligations and requirements under HCSL.  Rather, health clubs

that only enter into contracts with customers online, like SOULCYCLE, should be

meticulously examined to ensure strict compliance with HCSL in light of the clear

Legislative intent to "safeguard the public and the ethical health club industry

against deception and financial hardship, and to foster and encourage competition,

fair dealing, and prosperity in the field of health club services."  By way of

example, Courts should be vigilant to prevent SOULCYCLE from failing to

include statutorily-required disclosures in their written contracts with New York

customers and instead hiding such required terms from its customers in separate,

non-integrated areas of its website (e.g., in a "FAQs" section of the website).

17.     While SOULCYCLE offers its customers contracts for "classes" at

their health clubs, as opposed to short-term or long-term memberships, it is still subject to and obligated to comply with HCSL.  There is no language or requirement in HCSL indicating that its provisions only apply to "memberships" for heath club services, and there are no distinctions for the name or manner used to identify the health club services provided to customers.

18.     In light of the above, all contracts entered into between SOULCYCLE and its customers in New York for health club services, including indoor cycling classes during the period of time identified in paragraph 28 below, are in violation of New York's HCSL (N.Y. GBL §§ 620 et seq.).  For example, SOULCYCLE's contracts with its customers for health club services in New York violate the following specific laws:

a.     A complete "copy of the written contract" between SOULCYCLE and its customers is not actually provided to the customer at the time the customer signs the contract, which is in violation of N.Y. GBL § 624(2). As provided above, the only conceivable written documents actually provided to customers at the time they enter into a contract with SOULCYCLE for health club services are the "Terms and Conditions" (for use of the SOULCYCLE's website and mobile application) and the "Rider Receipt" or "confirmation e-mail." However, such documents do not provide the material terms of the contract between SOULCYCLE and its customers, let alone the required statutory terms

under HCSL.  Rather, such required contractual terms are materially misrepresented in the documents that are provided by SOULCYCLE to its customers and/or are actively concealed by SOULCYCLE on SOULCYCLE's website.  Furthermore, a customer's purported ability to review "Frequently Asked Questions" by other SOULCYCLE customers, or other non-integrated areas of SOULCYCLE's website, is insufficient to comply and does not comply with the requirements of N.Y. GBL § 624.

        b.     The contracts at issue between SOULCYCLE and its customers do not contain the requisite language related to the customers' rights to cancel the contract in violation of N.Y. GBL § 624(2), and instead contain language that illegally prohibits customers from cancelling their contracts.  N.Y. GBL § 624(2) requires "every contract for services" to include the following language in at least ten point bold type: "CONSUMERS RIGHT TO CANCELLATION.  YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR FURTHER OBLIGATIONS WITHIN THREE (3) DAYS FROM THIS DATE…".  This statutory provision requires a health club to include certain express language relative to a customer's rights to cancel, which SOULCYCLE not only neglects to provide to its customers, but also affirmatively misstates in its actual contracts to the detriment of PLAINTIFF and the public, and SOULCYCLE is therefore in violation of this statutory provision.

c.      The contracts at issue between SOULCYCLE and its customers also do not

contain the requisite language related to the customers' rights to cancel the contract

in violation of N.Y. GBL § 624(3), and instead contain language that illegally

prohibits customers from cancelling their contracts.  N.Y. GBL § 624(3) requires

"every contract for services" to include the following language in at least ten point

bold type:  "ADDITIONAL RIGHTS TO CANCELLATION:  You may also

cancel this contract for any of the following reasons:  If upon a doctors' order, you

cannot physically receive the services because of significant physical disability for

a period in excess of six months.  If you die, your estate shall be relieved of any

further obligation for payment under the contract not then due and owing.  If you

move your residence more than 25 miles from any health club operated by seller.

If the services cease to be offered as stated in the contract.  All money paid

pursuant to such contract cancelled for the reasons contained in this subdivision

shall be refunded within 15 days of receipt of such notice of cancellation; provided

however that the seller may retain the expenses incurred and the portion of the total

price representing the services used or completed, and further provided that that the

seller may demand the reasonable cost of goods and services which the buyer has

consumed or wishes to retain after cancellation of the contract."  This statutory

provision requires a health club to include certain express language relative to a

customer's rights to cancel, which SOULCYCLE not only neglects to provide to

its customers, but also affirmatively misstates in its actual contracts to the detriment of PLAINTIFF and the public, and SOULCYCLE is therefore in violation of this statutory provision.

19.    N.Y. GBL § 627 specifically provides that "[a]ny contract for services which does not comply with the applicable provisions of this article shall be void and unenforceable as contrary to public policy."  It is clear that the intent of the New York Legislature in enacting HCSL was to void contracts where a health club failed to strictly comply with the specific, or even technical, requirements of HCSL for purposes of safeguarding the public and regardless of whether or not an individual customer sustained any particular injury or harm as a result of such violations.  Notwithstanding this clear Legislative intent to "safeguard the public," every individual customer that entered into a contract with SOULCYCLE at all times relevant to the CLASS as defined at paragraph 28 below, which contracts violate the provisions of HCSL as explained above, was specifically injured and harmed by, among other things, paying money or fees to SOULCYCLE pursuant to a "void and unenforceable" contract and not being otherwise made aware of his or her statutory rights under HCSL.

20.    By willfully ignoring and violating New York's HCSL, SOULCYCLE receives a windfall of ill-gotten and illegal profits and benefits.  For example, by failing to provide its customers with the complete written copies of

their contracts and failing to properly advise its customers of their statutory rights to cancel such contracts, SOULCYCLE deceives its customers and unlawfully retains forfeited contract payments from its customers.   In addition, by neglecting to adhere to the well-established laws when entering into health club service contracts with customers in New York, SOULCYCLE is unjustly enriched by not having to invest the time, expense or resources for contract administration and management, which is in direct violation of another Legislative intent of HCSL "to foster and encourage competition, fair dealing, and prosperity in the field of health club services."

21.    On or around May 15, 2016, through SOULCYCLE's website, PLAINTIFF entered into a contract with SOULCYCLE for health club services, specifically for indoor cycling classes at SOULCYCLE's facilities in New York. PLAINTIFF specifically entered into a "5 Classes" contract with SOULCYCLE for which she issued payment of $165.00.

22.    A complete and statutorily compliant written copy of the contract between PLAINTIFF and SOULCYCLE was not provided to PLAINTIFF at the time she signed the contract.  Instead, as indicated above, at the time she entered into the contract with SOULCYCLE, PLAINTIFF checked a box signifying her understanding and acceptance of the "Terms and Conditions" (which terms and conditions only apply to the use of SOULCYCLE's website and mobile app) and

she thereafter received a "Rider Receipt" via e-mail (which merely indicated the type of contract entered into by PLAINTIFF and the payment information used for same).  Further, the "Rider Receipt" sent to PLAINTIFF provided: "Exchange/store credit only," "No refunds" and "Honored within 30 days of purchase" (although the "5 Classes" purportedly provided for a 45-day term), thereby actively misinforming Plaintiff of her statutory rights to cancel the contract.  Neither the "Terms and Conditions" nor the "Rider Receipt," which are the only conceivable written documents provided to PLAINTIFF at the time she signed or entered into a contract with SOULCYCLE, are sufficient to constitute a "copy of the written contract" between PLAINTIFF and SOULCYCLE that was required to be provided to PLAINTIFF under N.Y. GBL § 624(2).

23.     The "Terms and Conditions" and "Rider Receipt" also failed to include the requisite language related to the PLAINTIFF's statutory rights to cancel the contract with SOULCYCLE, as set forth at paragraphs 18.b. and 18.c. above.

24.     PLAINTIFF's contract with SOULCYCLE therefore did not comply with the provisions of HCSL, and is thus "void and unenforceable as contrary to public policy."  PLAINTIFF was injured as a result of SOULCYCLE's conduct by not being made aware of her statutory rights under HCSL, which information SOULCYCLE was explicitly required to provide in the contract, and by paying

fees to SOULCYCLE to enter into a "void and unenforceable contract." The

public is also injured by SOULCYCLE's illegal and deceitful contracting practice,

as described herein, which includes neglecting to identify the customer's statutory

rights in the contract, accepting payments and fees pursuant to void and

unenforceable contracts, and retaining illegally forfeited contract payments.

25.    In addition, upon information and belief, SOULCYCLE charges its

customers a premium for contracts for indoor cycling classes, which amounts are

significantly higher than those charged by health clubs offering similar services in

the same locations that SOULCYCLE operates.  Upon further information and

belief, SOULCYCLE bills itself as an "exclusive" health club, marketing to

affluent clientele and operating only in affluent areas, and touts its celebrity

following and its partnerships with luxury brands in order to further justify

premiums charged to customers for indoor cycling classes.  However, in light of

SOULCYCLE's business model, and illegal contracting process, as described

hereinabove, the value of the contracts between SOULCYCLE and its customers,

including the contract entered into with PLAINTIFF, are significantly less than

what such customers, and PLAINTIFF, actually pay to SOULCYCLE.  For

example, the value of the contract that PLAINTIFF entered into with

SOULCYCLE, which was not actually provided to her as required by law, did not

include a statutory right to cancel and did not include statutory relief to the extent

PLAINTIFF died or became disabled, was worth significantly less than what PLAINTIFF actually paid to SOULCYCLE.

26.     Due to unforeseen conflicts with her schedule, shortly after purchasing the "5 Classes" package, PLAINTIFF discovered that she would be unable to use all five of the classes she purchased within the improper term designated for the contract by SOULCYCLE, i.e., within 45 days of entering into the contract (although her "Rider Receipt" falsely states that her contract would only be "[h]onored within 30 days of purchase"), and she therefore was required to forfeit a portion of the payments she made to SOULCYCLE pursuant to her contract.  However, if SOULCYCLE had included the required disclosures in the contract regarding PLAINTIFF's actual legal rights to cancel the contract, instead of misrepresenting to PLAINTIFF that she could not cancel the contract, PLAINTIFF would have exercised her statutory rights and cancelled, and thereby avoided having to forfeit that portion of her contract payment.  Such forfeited contract payment made to SOULCYCLE by PLAINTIFF constitutes further injury and harm sustained by PLAINTIFF as a result of SOULCYCLE's violations of HCSL.  In addition, PLAINTIFF experienced feelings of frustration, annoyance and/or anxiety because she believed she was not able to cancel the contract and receive a refund, and would instead have to forfeit a portion of her contract payment to SOULCYCLE.

27.     To the extent SOULCYCLE modifies its contracting process to comply with the law, and is willing to provide a contract to PLAINTIFF in the future that complies with the requirements of HCSL, Plaintiff would be willing to enter into an agreement with SOULCYCLE for future indoor cycling classes.

## CLASS ACTION ALLEGATIONS

28.     PLAINTIFF is a member of the class (the "CLASS" or "CLASS MEMBERS") defined as:

> All individuals within the State of New York who
> entered into an agreement for indoor cycling class
> services with SOULCYCLE that was identical or
> substantially similar to the contract between PLAINTIFF
> and SOULCYCLE within the six years prior to the filing
> of this action up to February 10, 2017.

29.     Excluded from the CLASS are SOULCYCLE's officers, directors, employees, agents, affiliates, legal representatives, attorneys at law, and assignees. Also specifically excluded is any justice, judge, judicial officer, court personnel, or juror assigned to any part of this case.

30.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, PLAINTIFF brings this action individually, on behalf of the general public, and on behalf of all individuals similarly situated.

31.     This civil action may be properly maintained as a Federal class action

pursuant to the provisions of Rule 23 because there is a well-defined community of

interest in the litigation and the proposed class can be defined with reasonable

particularity.  Prosecuting separate actions by individual class members would

create a risk of inconsistent or varying adjudications and SoulCycle has acted on

grounds that apply to the class so that damages, injunctive relief and the other

relief sought by this action is appropriate respecting the class as a whole.  In

addition, questions or law and fact common to the class members predominate over

any questions affecting only individual members, and the class action is superior to

other methods of adjudicating this matter.

32.     **Numerosity**: The CLASS is so numerous that individual joinder of all

members is impractical under the circumstances of this case.  While the exact

number of class members is unknown to PLAINTIFF at this time, it is believed

that the CLASS has in excess of 100,000 members.

33.     **Common questions of law and fact predominate**: Common

questions of law and fact exist as to all members of the CLASS and predominate

over any questions which affect only individual members of the CLASS. These

common questions of law and fact include:

        a.      Whether SOULCYCLE violated HCSL;

        b.      Whether SOULCYCLE's business acts and practices violated

CPDAP;

       c.      Whether the contracts between the CLASS MEMBERS and SOULCYCLE are void and unenforceable as contrary to public policy;

       d.      The class-wide nature of SOULCYCLE's course of conduct;

       e.      The amount of additional revenues and profits obtained by SOULCYCLE attributable to their alleged unlawful conduct;

       f.      The appropriate nature of class-wide equitable relief including corrective and remedial action;

       g.      Whether the members of the CLASS are entitled to restitution as a result of SOULCYCLE's conduct, and if so, what is the proper measure and appropriate formula to be applied in determining such restitution; and

       h.      Whether the members of the CLASS have sustained damages as a result of SOULCYCLE's conduct, and if so, what is the proper measure and appropriate formula to be applied in determining such damages.

34.    **Typicality**: PLAINTIFF's claims are typical of the claims of the members of the CLASS, which sustained injuries and damages arising out of SOULCYCLE's common course of conduct in violating the laws complained of herein, given that PLAINTIFF and each member of the CLASS entered into the subject allegedly unlawful contracts with SOULCYCLE.  The injuries of each CLASS member were caused directly by SOULCYCLE's wrongful conduct in

violation of the law as alleged herein.  The policies, procedures, and practices utilized by SOULCYCLE are part of a common course of conduct of unlawful, deceptive acts and practices.  As a result, the issues affecting all members of the CLASS predominate over those issues, which affect only the interest of any individual CLASS member.

35.    **Adequacy**: PLAINTIFF will fairly and adequately protect the interest of the members of the CLASS.  PLAINTIFF is an adequate representative of the CLASS as she has no interests that are adverse to the interests of absent CLASS members.  PLAINTIFF has retained counsel who has experience and success in the prosecution of consumer protection actions, including class actions.

36.    In this case, a class action is superior to other available means for the fair and efficient adjudication of this controversy, since individual joinder of all members of the CLASS is impractical.  Furthermore, as the damages or injuries suffered by each individual member of the CLASS may be relatively small, the expense and burden of individual litigation would make it difficult or practically impossible for individual members of the CLASS to adequately redress the wrongs done to them.  The cost to the court system for adjudication of individualized litigation for the matters stated in this Complaint would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

## FIRST CAUSE OF ACTION

### Violations of New York General Business Law §§ 620 et seq.

37.     PLAINTIFF repeats, re-alleges, and incorporates the allegations made in the previous paragraphs of the Complaint as if stated fully herein.

38.     N.Y. GBL §§ 620 et seq. regulate health club contracts, which the New York legislature has deemed necessary for the public welfare.  This section safeguards the public from fraud, deceit, and imposition of financial hardship, while at the same time fostering competition and fair dealing.

39.     SOULCYCLE operates indoor cycling studios throughout the State of New York. SOULCYCLE provides indoor cycling classes and services to the public for the payment of fees. Such services are subject to the provisions of HCSL.

40.     PLAINTIFF and the CLASS MEMBERS entered into contracts with SOULCYCLE for health club services, specifically indoor cycling classes.

41.     Such contracts violate the provisions of HCSL in the following ways:

a.     A complete "copy of the written contract" was not provided to PLAINTIFF or the CLASS MEMBERS in violation of N.Y. GBL § 624(2), and the actual terms of the contracts were actively misrepresented and concealed by SOULCYLCE.

b.     The contracts do not contain the requisite language related to

the customers' rights to cancel the contract in violation of N.Y. GBL § 624(2), and SOULCYCLE actively misinformed PLAINTIFF and the CLASS MEMBERS of their rights to cancel the contracts.

        c.    The contracts do not contain the requisite language related to a customer's rights to relief upon death, disability or relocation in violation of N.Y. GBL § 624(3).

42.    In entering into such contracts with PLAINTIFF and the CLASS MEMBERS, SOULCYCLE therefore violated HCSL.

43.    Pursuant to N.Y. GBL § 627(1), such contracts with PLAINTIFF and the CLASS MEMBERS are void and unenforceable as contrary to public policy.

44.    PLAINTIFF and the CLASS MEMBERS have suffered damages as a direct and proximate result of SOULCYCLE's violations of law as alleged herein in an amount in excess of the jurisdictional limits of this Court to be proven at the time of trial.

45.    Pursuant to N.Y. GBL § 628(1), PLAINTIFF and the CLASS MEMBERS are entitled to judgment for "three times the actual damages plus reasonable attorney fees."

46.    In addition, pursuant to N.Y. GBL § 629(1), SOULCYCLE is liable to PLAINTIFF and the CLASS MEMBERS for a civil fine of up to $2,500 for each violation of the HCSL.

47.     In addition, PLAINTIFF and the CLASS MEMBERS allege that the aforementioned conduct by SOULCYCLE amounts to such gross, wanton or willful fraud, dishonesty, or malicious wrongdoing as to involve a high degree of moral culpability to warrant an award of punitive damages against SOULCYCLE, in an amount to be proven at trial, in order to deter SOULCYCLE from engaging in similar conduct in the future.

## SECOND CAUSE OF ACTION

### Violations of the New York General Business Law § 349

48.     PLAINTIFF repeats, re-alleges, and incorporates the allegations made in the previous paragraphs of the Complaint as if stated fully herein.

49.     N.Y. GBL § 349(a) prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

50.     Pursuant to its violations of HCSL, as alleged herein, SOULCYCLE has engaged in deceptive acts or practices in the conduct of business, trade or commerce or in the furnishing of service as defined by N.Y. GBL § 349.

51.     Upon information and belief, SOULCYCLE has taken the actions and engaged in the conduct alleged herein with the intent to injure PLAINTIFF and the CLASS MEMBERS and to gain an unfair competitive advantage in the marketplace for health club services.

52.     SOULCYCLE's acts or omissions as alleged herein are deceptive because it intentionally misled PLAINTIFF and the CLASS MEMBERS as to their rights and obligations with the goal of acquiring unlawful revenues and profits to the detriment of its buyers.  Further, SOULCYCLE's conduct offends established public policy and/or is unethical, oppressive, unscrupulous, and substantially injurious to consumers.

53.     SOULCYCLE's conduct has caused substantial injury, which was not reasonably avoidable by PLAINTIFF or the CLASS MEMBERS, and is not outweighed by countervailing benefits to consumers or to competition.

54.     SOULCYCLE is engaging, has engaged, and there is a substantial likelihood that they will continue to engage in these unlawful and deceptive practices unless enjoined by this Court.  As such, pursuant to N.Y. GBL § 349(h), SOULCYCLE should be enjoined from these unlawful and deceptive practices.

55.     As a direct and proximate result of SOULCYCLE's unlawful and deceptive conduct, PLAINTIFF and the CLASS MEMBERS have suffered and will continue to suffer substantial actual losses, and SOULCYCLE has been unjustly enriched in amounts to be determined at trial.  Pursuant to N.Y. GBL § 349(h), PLAINTIFF and the CLASS MEMBERS are entitled to actual damages or fifty dollars, whichever is greater, for each violation of N.Y. GBL § 349.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF demands judgment against SOULCYCLE as follows:

1.     That this case be certified as a class action, with PLAINTIFF as CLASS representative and PLAINTIFF's counsel as CLASS counsel;

2.     For compensatory damages in an amount to be determined at trial;

3.     Three times actual damages pursuant to N.Y. GBL § 628;

4.     Civil fines of up to $2,500 for each violation of N.Y. GBL §§ 620 et seq.

5.     For restitution, disgorgement, rescission, injunctive relief, and other equitable relief as may be just;

6.     Pursuant to N.Y. GBL § 349(h), that SOULCYCLE be enjoined from violating N.Y. GBL § 349 and N.Y. GBL §§ 620 et seq., in connection with the violations alleged in this Complaint;

7.     Prejudgment interest;

8.     Punitive damages according to proof;

9.     Attorney's fees and costs; and

10.     Any other and further relief that the court considers proper.

## JURY TRIAL DEMAND

PLAINTIFF and the CLASS are entitled to, and hereby demand, a trial by jury.


Dated:        August 18, 2017                Respectfully submitted,


By: ____/s/Evan S. Schwartz____
*Evan S. Schwartz*
New York Bar No. 2428825
**SCHWARTZ LAW PC**
122 East 42nd Street, Suite 725
New York, NY 10168
(212) 608-5445


_____/s/Stephen M. Hauptman_____
*Stephen M. Hauptman*
New York Bar No. 4491411
**NEWMEYER & DILLION LLP**
895 Dove Street, 5th Floor
Newport Beach, CA  92660
(949) 854-7000

*Attorneys for Plaintiff Lori Kilgannon and the Class*